UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                                                    Case No. 09-27916-RAM

MAGALY DEL ROCIO ARAGON,                           Chapter 7

Debtor.
_____/

### DEBTOR'S MOTION TO DETERMINE VALUE OF SECURED CLAIM AND TO OTHERWISE AVOID OR STRIP OFF UNSECURED LIEN PURSUANT TO 11 U.S.C. §506(a)(d)

Debtor, MAGALY DEL ROCIO ARAGON ("Debtor"), by and through undersigned counsel, submits *Debtor's Motion to Determine Value of Secured Claim and to Otherwise Avoid or Strip Off Unsecured Lien Pursuant To 11 U.S.C. §506(a)(d)* ("Motion"), and in support of the Motion, states the following facts:

1. On August 27, 2009, Debtor filed a Chapter 7 Voluntary Petition for bankruptcy relief ("Petition").

2. Accompanying the Petition were the Debtor's bankruptcy schedules.

3. The Debtor listed her homestead on Schedule A: 10925 NW 47th Lane, Doral, FL 33178 ("Homestead"). The Debtor claimed her Homestead as an exempt asset on Schedule C. No creditor or party-in-interest objected to the Debtor's claimed exemptions, and therefore the claimed exemption on her Homestead was allowed.

4. The Debtor listed the value of the Homestead, on Schedule A as $320,000.00.

5. On Schedule D, the Debtor listed the two mortgage loans, that have liens on the Homestead, as follows:

| Creditor: | Nature of Lien: | Amount of claim | Unsecured Portion |
| --- | --- | --- | --- |
| Aurora Loan Services | 1st Mortgage | $349,307.00 | $29,307.00 |
| Aurora Loan Services | 2nd Mortgage | $86,796.00 | $86,796.00 |

6. With respect to the second mortgage on the Debtor's Homestead, prior to the commencement of this Chapter 7 case, the Debtor borrowed the sum of $88,000.00 from WMC Mortgage Corp., ("WMC") and executed a Note dated Nov. 6, 2006 ("Note") to reflect this debt. Repayment of the Note was secured by a Mortgage dated Nov. 6, 2012 ("Mortgage") executed by the Debtor in favor of WMC. The Mortgage serves as a second lien against the Debtor's Homestead. The Mortgage was recorded in the official public records for Miami-Dade County, Florida, Book No. 25110, at page 1166-1175. True copies of the Note and Mortgage are attached to this Motion and made a part hereof. Upon information and belief, at some point in time, the ownership and/or servicing of the Note and Mortgage have been transferred to Aurora Loan Services ("Aurora").

7. On December 9, 2009, this Court entered its *Discharge of Debtor* (CP# 35) ("Discharge").

8. Thereafter, on March 30, 2010, this Court entered its *Final Decree* (CP#40) ("Final Decree") and closed the case.

9. Subsequent to the entry of her Discharge, and subsequent to the entry of the Final Decree, and only recently, the 11th Circuit Court of Appeals in the case of *McNeal vs GMAC Mortgage, LLC*, 2012 WL 1649853 (11th Cir., 2012) has clarified and reiterated the controlling law in this Circuit as it relates to the ability of a chapter 7 debtor to strip off a wholly unsecured lien:

... the present controlling precedent in the Eleventh Circuit remains our decision in *Folendore v. United States Small Bus. Admin.*, 862 F.2nd 1537 (11th Cir. 1989). In *Folendore*, we concluded that an allowed claim that was wholly unsecured... was voidable under the plain language of section 506(d).

10. The *McNeal* opinion recognized the confusion on the subject of a chapter 7 debtor's ability to avoid a wholly unsecured lien. This confusion was created by the U.S. Supreme Court's opinion in *Dewsnup v. Timm*, 502 US 410 (1992). The *McNeal* Court indicated that there are bankruptcy court decisions in this circuit that have ruled that *Folendore* was abrogated by *Dewsnup*. The *McNeal* Court distinguished *Dewsnup*, and reaffirmed that *Folendore* remains good law.

11. The law in this Circuit is that a chapter 7 debtor can avoid a wholly unsecured lien.

12. Upon reliance of the *McNeal* decision, the Debtor moved to reopen her closed Chapter 7 case. This Court granted the motion to reopen, and entered its *Order Granting Debtor's Motion to Reopen Case Pursuant To 11 U.S.C. §350 and Bankruptcy Rule 5010 [D.E. #43]*. The Debtor's case has been reopened for the limited purpose of seeking to avoid or strip off the wholly unsecured claim represented by the second Mortgage described above.

13. Accordingly, the Debtor through this Motion seeks an Order of this Court that because there is insufficient equity or value in the Homestead to fully secure the first mortgage, then the second Mortgage currently owned, held and serviced by Aurora is completely and wholly unsecured, in accordance with Bankruptcy Code §506(a). Further, pursuant to Bankruptcy Code §506(d), the Court should enter an order that the purported lien as represented by the Mortgage is void, and should be immediately cancelled, discharged and extinguished as a lien against the Homestead.

-4-

WHEREFORE, the Debtor, Magaly Del Rocio Aragon, respectfully requests that this Court enter an Order  (A) finding that because there is insufficient equity or value in the Homestead to fully secure the first mortgage, then the second Mortgage currently owned, held and serviced by Aurora is completely and wholly unsecured, in accordance with Bankruptcy Code §506(a); (B) finding that pursuant to Bankruptcy Code §506(d), the purported lien as represented by the Mortgage is void, and should be immediately cancelled, discharged and extinguished as a lien against the Homestead; and ( C ) for such other and further relief that this Court deems appropriate under the circumstances.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **August 22, 2012**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document, is being served this day on and on all counsel of record or pro se parties identified on the attached service list, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

BEHAR, GUTT & GLAZER, P.A.
Attorneys for Debtor
2999 N.E. 191st Street, Fifth Floor
Aventura, Florida 33180
Telephone: (305) 931-3771
Fax: (305) 931-3774

By____S/ **Brian S. Behar**____
  BRIAN S. BEHAR
  FBN: 727131
  ROBERT J. EDWARDS
  FBN: 007544

## Service List

Aurora Loan Services
Attn: Bankruptcy Dept.
2617 College Point - POB 1706
Scottsbluff, NE 69363

Aurora Loan Services LLC
c/o Corporation Service Company,
as Registered Agent
1201 Hays Street
Tallahassee, FL 32301

Aurora Loan Services LLC
Attn: Dale Fauss, Manager
10350 Park Meadows Drive
Littleton, CO 80124

Aurora Loan Services Corp.
C/o CT Corporation System
as Registered Agent
1200 South Pine Island Rd.
Plantation, FL 33324

Aurora Loan Services Corp.
Attn: Matthew Toeniskoetter, President
1910 Cypress Ave.
Ft Pierce, FL 34949

Aurora Loan Services Inc.
Attn: Rick Skogg, President
2530 S. Parker RD
Suite 601
Aurora, CO 80014

Aurora Loan Services
Attn: Officer
10350 Park Meadows Drive
Littleton, CO 80124

# NOTE

Serv #: 11746465

DEL ROCIO ARAGON
Loan #: 11746465
MIN: 100136300117464650

November 6, 2006         MIAMI                                      , Florida
[Date]                   [City]
10925 NORTHWEST 47TH LANE, DORAL, FL 33178

[Property Address]

1. **BORROWER'S PROMISE TO PAY**

   In return for a loan that I have received, I promise to pay U.S. $ 88,000.00         (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is WMC MORTGAGE CORP.

   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

2. **INTEREST**

   I will pay interest at a yearly rate of  9.375   %.
   Interest will be charged on unpaid principal until the full amount of principal has been paid.

3. **PAYMENTS**

   I will pay principal and interest by making payments each month of U.S. $ 731.94
   I will make my payments on the 1st    day of each month beginning on      January 1, 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on December 1, 2036  , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
   I will make my monthly payments at 4828 Loop Central Drive, Houston, TX 77081-2226
                                                                                or at a different place if required by the Note Holder.

4. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) Late Charge for Overdue Payments

   If the Note Holder has not received the full amount of any of my monthly payments by the end of 15    calendar days after the date it is due, I will promptly pay a late charge to the Note Holder. The amount of the charge will be 5.000    % of my overdue payment, but not less than U.S. $ N/A     and not more than U.S. $ N/A    . I will pay this late charge only once on any late payment.

   (B) Notice from Note Holder

   If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

   (C) Default

   If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (D) Payment of Note Holder's Costs and Expenses

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

FLORIDA – SECOND MORTGAGE – 1/80 – FNMA/FHLMC UNIFORM INSTRUMENT
DOCUSFL1
WMCD6FL1.vzx 08/25/2005                        Page 1 of 3                              Form 3910

MA

11746465                                                                                           11746465

**5. THIS NOTE SECURED BY A MORTGAGE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, dated November 6, 2006 protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**10. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

Page 2 of 3

DOCU6FL2
WACD6FL2.VTX  08/25/2005

11746465

**NOTICE TO BORROWER**
Do not sign this Note if it contains blank spaces.
All spaces should be completed before you sign.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____    NOV 0 6 2006
- Borrower - MAGALY DEL ROCIO ARAGON - Date -

11746465

(Sign Original Only)

DOC#073.vtx 08/15/2005            Page 3 of 3

## Correction Agreement
## Limited Power of Attorney

Serv #: 11746465                                                                                     Loan #: 11746465

On  November 6, 2006  , the undersigned borrower(s), for and in consideration of the approval, closing and/or funding of their mortgage loan (# 11746465      ), hereby grants  WMC MORTGAGE CORP.

, as lender, limited power of attorney to correct and/or execute or initial all typographical errors discovered in any or all of the closing documentation required to be executed by the undersigned at settlement. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on his/her behalf.

THIS LIMITED POWER OF ATTORNEY MAY NOT BE USED TO INCREASE THE INTEREST RATE THE UNDERSIGNED IS PAYING, INCREASE THE TERM OF THE UNDERSIGNED'S LOAN, INCREASE THE UNDERSIGNED'S OUTSTANDING PRINCIPAL BALANCE OR INCREASE THE UNDERSIGNED'S MONTHLY PRINCIPAL AND INTEREST PAYMENTS. Any of these specified changes must be executed directly by the undersigned.

This limited power of attorney shall automatically terminate 180 days from the date of this agreement.

IN WITNESS WHEREOF, the undersigned have executed this Limited Power of Attorney as of the date and year first above referenced.

_____  NOV 0 6 2006
- Borrower - MAGDA DEL ROCIO ARAGON - Date -

State of  Florida
County of  Miami-Dade

On  NOV 0 6 2006  before me,  Lidia Mejia  , personally appeared

personally known to me – OR – proved to me on the basis of satisfactory evidence to be the Person(s) whose name(s) subscribed to the within instrument and acknowledged to me that      executed the same in      authorized capacity(ies), and that by      signature(s) on the instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public  Lidia Mejia

Lidia Mejia
Notary Public-State of FL
Commission# DD338020  My commission expires:
Expires 7/15/2008

DOCUL36
WMCDL36.VTX  08/25/2005

```
CFN  2006R1234900
OR Bk 25110 Pgs 1166 - 1175; (10pgs)
RECORDED 11/18/2006 11:01:42
MTG DOC TAX 308.00
INTANG TAX 176.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

After Recording Return To:
WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

Attn:    (WHOLESALE)

This document was prepared by:
DANIEL GARCIA

WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

## MORTGAGE

DEL ROCIO ARAGON
Loan #:  11746465
MIN:  100136300117464650
PIN:  35-3019-025-0290

Servicing #: 11746465

THIS MORTGAGE is made this **6th** day of **November, 2006** between the Mortgagor,
MAGALY DEL ROCIO ARAGON , a Single woman.

(herein "Borrower"), and the Mortgagee, MERS. "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
WMC MORTGAGE CORP.

is a corporation organized and existing under the laws of   **CALIFORNIA**
whose address is   **3100 THORNTON AVE., BURBANK, CA 91504-3183**
(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ **88,000.00**   which indebtedness is evidenced by Borrower's note dated **November 6, 2006**   and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on **December 1, 2036**   ;
TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County of
**MIAMI-DADE**                                                     , State of Florida:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS EXHIBIT 'A'.**

Lot 29, in Block 1, of Doral Meadows 1st Addition, according to the Plat thereof, as recorded in Plat Book 153, at Page 65, of the Public Records of Miami-Dade County, Florida

FLORIDA – SECOND MORTGAGE – 1/80 – FNMA/FHLMC UNIFORM INSTRUMENT with MERS
DOCU7FL1                                            Page 1 of 7                                     Form 3810
DOCU7FL1.VTX  08/25/2005

11746465                                                                                11746465
which has the address of  10925 **NORTHWEST 47TH LANE** ,
                          [Street]
**DORAL**                                      , Florida  33178        (herein "Property Address");
[City]                                          [Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such a holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its

DOCU7FL2                                   Page 2 of 7                                    Form 3810
DOCU7FL2.VTX  08/25/2005



MA

11746465                                                                                11746465

acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments, and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payments thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of



11746465                                                                                                        11746465

condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

DOCU7FL4                                           Page 4 of 7                                            Form 3810
DOCU7FL4.VTX  08/25/2005





11746465                                                                                            11746465

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorney's fees, court costs, and costs of documentary evidence, abstracts and title reports.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees, and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligation secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. **Attorneys' Fees.** As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, which may be awarded by an appellate court.

REFERENCE IS HEREBY MADE TO THE RIDER(S) ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES.

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Other(s) [specify] | |

11746465                                                                                      11746465

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

### NOTICE TO BORROWER

Do not sign this Mortgage if it contains blank spaces. All spaces should be completed before you sign. Signed, sealed and delivered in the presence of:

NOV 0 6 2006

- Borrower - MAGALY DEL ROCIO ARAGON - Date -

DOCU7FL6
DOCU7FL6.VTX  08/25/2005

Page 6 of 7



Form 3810

Book25110/Page1171        CFN#20061234900              Page 6 of 10

11746465

11746465

STATE OF FLORIDA
COUNTY OF ~~Miami-Dade~~ ss:

I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgments, personally appeared

**Magally Del Rocio Aragon**

to me known to be the person(s) described in and who executed the foregoing instrument and acknowledged before me that _____ executed the same for the purpose therein expressed.

Witness my hand and official seal in the county and state aforesaid this **NOV 0 6 2006** day of

(SEAL)

_____
Notary Public
**Lidia Mejia**
My commission expires:

Lidia Mejia
Notary Public-State of FL
Commission# DD338020
Expires 7/15/2008

DOCU7FL7
DOCU7FL7.VTX  08/25/2005

Page 7 of 7

Form 3810

## PLANNED UNIT DEVELOPMENT RIDER

DEL ROCIO ARAGON

Servicing Number: 11746465

Loan Number: 11746465
MIN: 100136300117464650

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 6th day of November 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to WMC MORTGAGE CORP.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
10925 NORTHWEST 47TH LANE DORAL, FL 33178

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS AND RESTRICTIONS FILED OF RECORD THAT AFFECT THE PROPERTY.

(the "Declaration"). The Property is a part of a planned unit development known as
DORAL MEADOWS

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

    PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

    A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association;

MULTISTATE PUD RIDER--Single Family/Second Mortgage--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3150 1/01
DOCUZPT1.vtx  08/25/2005   *(page 1 of 3 pages)*   Amended

MA

11746465                                                                                          11746465

and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

   B. **Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

   (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

   (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

   Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

   In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

   C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

   D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

   E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

   F. **Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER—Single Family/Second Mortgage—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3150 1/01
DOCUZPT2.VTX  08/25/2005                          *(page 2 of 3 pages)*                               Amended



11746465
11746465

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____  NOV 6 2006
- Borrower - MAGALY DEL ROCIO ARAGON - Date -

MULTISTATE PUD RIDER--Single Family/Second Mortgage --Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3150 1/01
DOCUZFT3
DOCUFT3.VTX  08/25/2005                          (page 3 of 3 pages)                                  Amended